IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  LECIA MCCLENDON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-14-1166-M |
| | ) | |
| 1.  CALIBER HOME LOANS, INC., | ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Lecia McClendon, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Lecia McClendon, is an adult female resident of Oklahoma County, Oklahoma.

2. Defendant Caliber Home Loans, Inc., is an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant based on claims of (1) disability discrimination and retaliation in violation of the ADA and ADAAA, and (2) interference with and retaliation for use of leave under the Family Medical Leave Act ("FMLA").

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendant is doing business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 22, 2014. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated July 31, 2014 (received by Plaintiff by mail thereafter), and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff began her employment with Defendant in or around December 2011 as a Customer Service Representative. Throughout Plaintiff's employment, her performance was at least satisfactory, if not excellent.

8. In or around December 2012, Plaintiff began taking intermittent FMLA leave to care for her husband, who had undergone surgery involving the resection of his intestine.

9. Plaintiff spoke with HR manager Christine Utne, who worked in Defendant's San Diego, California office, to obtain her FMLA paperwork and information regarding her leave. All of the HR responsibilities for the Oklahoma City office were being performed out

of the San Diego location at that time.

10. Plaintiff also notified her supervisor, Dustin Ames, of any required absences from work.

11. In or around April 2013, Plaintiff's husband had a massive heart attack during a surgery to correct the intestinal resection. Plaintiff used FMLA leave for her absences to care for her husband thereafter.

12. In or around June 2013, Plaintiff spoke with Martha Ellis, Senior Vice President of Loan Administration, about her concerns regarding Defendant's inclement weather plans. Particularly, several weeks prior during a tornado outbreak, all of the managers left the premises, but directed Plaintiff to stay at the office until the end of her shift. Defendant's building does not have a tornado shelter. Plaintiff informed Ellis that she felt the direction for Plaintiff to stay at work in an unsafe situation was in retaliation for her use of FMLA.

13. On or about October 12, 2013, Plaintiff suffered a non-work-related injury to her lower legs when a headboard in a store fell on her, striking her from the back of her knees down to her feet. Plaintiff suffered severe bruising and nerve damage to her lower legs and had to take a few day off work for medical treatment.

14. Thereafter, Plaintiff notified Defendant of her need to take FMLA leave from December 23, 2013 to January 28, 2014 to care for her husband, who was undergoing further surgery to take place on or about January 14, 2014. Prior to his surgery, Plaintiff's husband

had to undergo multiple preparatory procedures and had multiple doctors' appointments.

15. When leaving work on Friday, December 20, 2013 to begin her FMLA leave, Plaintiff was approached by Vice President of Customer Service, Courtney Ruiz. Ruiz presented Plaintiff with a write-up for her five (5) <u>anticipated</u> days off the following week. Apparently, according to policy, five unexcused absences would result in termination. However, Plaintiff refused to sign the write-up, stating that the anticipated absences were approved and covered by FMLA.

16. Plaintiff was then off work on FMLA.

17. Plaintiff attempted to return to work one week earlier than expected on or about January 21, 2014. However, she had to leave work to return home to care for her husband. Plaintiff then completed her scheduled FMLA leave, returning to work on or about January 28, 2014.

18. When Plaintiff returned to work, she had no chair at her desk. Plaintiff spoke with her supervisor, Ames, about what work she should do. Ames told her to assist some of the new customer service representatives with turning over their phone calls, which Plaintiff did.

19. While Plaintiff was assisting a co-worker (as directed), Ruiz yelled at Plaintiff to go to Ruiz' office. Ruiz then accused Plaintiff of doing nothing during her first thirty (30) minutes at work that day. In response, Plaintiff told Ruiz that she had been helping co-workers pursuant to Ames' direction.

20.   Ruiz then told Plaintiff that the write-up Ruiz had presented to Plaintiff in December 2013 was not accurate and that those days were, in fact, covered by FMLA.

21.   That day (January 28, 2014), Plaintiff called Defendant's hotline to report the discriminatory and retaliatory treatment she had suffered at work.

22.   On or about February 19, 2014, Plaintiff had a follow-up doctor's appointment related to her leg injury. She was told by her physician that the sciatic nerve was damaged, and she needed surgery on her legs, which was scheduled for March 5, 2014. Plaintiff's doctor told her that she needed to be off work until the surgery, as her leg condition made walking and standing very difficult and so that she would be able to attend her pre-operative appointments.

23.   Immediately after her doctor's appointment, Plaintiff called Ashley McNabb and spoke to her about her need for time off and request for FMLA and short term disability paperwork. McNabb had become the designated HR manager for Plaintiff's location as of January 15, 2014

24.   Plaintiff's doctor completed the FMLA paperwork provided by McNabb for Plaintiff and faxed it to the fax number preprinted on the forms.

25.   Plaintiff then spoke with McNabb again about one week later on or about February 26, 2014. McNabb told Plaintiff that she had not received Plaintiff's FMLA paperwork. Therefore, Plaintiff asked her doctor to re-send the forms, which he did via fax.

26.   On or about March 4, 2014, Plaintiff's doctor again faxed the documents in

5

preparation for Plaintiff's surgery the following day, as McNabb claimed she still had not received them. Plaintiff called McNabb to confirm that the forms were being sent to the correct number, and through their conversation found that the fax number printed on the FMLA forms was the fax number to the HR department in San Diego, not to McNabb personally. So, Plaintiff had the documents faxed to an additional fax number provided by NcNabb.

27. Also, on or about March 4, 2014, Plaintiff notified NcNabb that she would be able to return to work on March 11, 2013.

28. Plaintiff's surgery was performed on or about March 5, 2014.

29. The following day, on or about March 6, Plaintiff received a phone call from NcNabb, stating that Plaintiff was terminated allegedly for insubordination for failing to complete her FMLA paperwork. And, on or about March 13, 2014, Plaintiff received a letter in the mail stating the same. However, such reason was pretext, as the documentation had been sent to both McNabb and the HR office in San Diego.

30. Plaintiff is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she was disabled, has a record of disability, and/or was perceived as disabled. Her disability substantially limits and/or limited her in one or more major life activities, including but not limited to walking and standing. Her disability impacts one or more of her internal bodily processes, including but not limited to normal musculoskeletal and nerve function. However, at all times relevant hereto, Plaintiff was able to perform the

essential functions of her job with or without reasonable accommodations.

31.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## **COUNT I - ADA AND ADAAA**

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

32.     The matters alleged above constitute discrimination, harassment, and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

33.     More specifically, Plaintiff was a qualified individual with a disability in that she suffers from a physical impairment (i.e., leg injury) which substantially limits her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes as shown herein.

34.     Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

35.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

36.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT II: FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37. The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave for self care in violation of the Family Medical Leave Act.

38. Plaintiff was entitled to medical leave because she required time off to care for her husband and for herself due to serious health conditions (as set forth above) and worked for Defendant (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

39. Defendant interfered with and retaliated against Plaintiff for her use of time off.

40. As set forth herein, Defendant's actions were in willful violation of the law. Defendant was aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

41. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

...

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 24th DAY OF OCTOBER, 2014.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
EMILY VAN VOLKINBURG, OBA #31744
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800     (telephone)
(405) 239-3801     (facsimile)
leonardjb@leonardlaw.net
emilyv@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED